# Exhibit 144



**Dechert LLP Draft: 02/27/14**

1095 Avenue of the Americas
New York, NY  10036-6797
+1 212 698 3500 Main
+1 212 698 3599 Fax
www.dechert.com

_____

**M. HOLLAND WEST**

holland.west@dechert.com
+1 212 698 3527 Direct
+1 212 698 0453 Fax

*Privileged and Confidential*
*Attorney-Client Communication*

**VIA E-MAIL**

February ●, 2014


AEF Investment LLC
c/o RA Investments LLC
40 West 57th Street
New York, NY 10019
Attention: Matthew Stein and Jérôme Lhote

Dear Gentlemen:

Following our recent telephone conversations and in-person meeting, you have requested our written views on the specific aspects discussed below relating to the following potential transactions ("Transactions"), the details of which you have provided to us.

The Transactions would be entered into by one or more "U.S. persons", as defined in Rule 902(k)(1) of Regulation S promulgated by the U.S. Securities and Exchange Commission ("SEC") under the U.S. Securities Act of 1933 as amended ("Securities Act"), and specifically an employee benefit plan wholly owned by such U.S. persons or a legal entity owned wholly or partially (directly or indirectly) by such U.S. persons ("Transactor"). It is currently contemplated that the Transactions would normally (but not always) involve the following three principal components: (1) the purchase (*i.e.*, a long position) of an equity security of a non-U.S. person issuer ("Stock"); (2) the lending (*i.e.*, a short position) of the Stock to a third party ("Stock Loan"); and (3) the purchase and/or sale (*i.e.*, a short position) of one or more hedging transactions or instruments referencing the Stock ("Hedge") which could be effectuated in the form of any one or more of the following financial transactions or instruments – (i) short sale, (ii) futures contract, contract for difference, or similar instrument, (iii) swap transaction, (iv) forward contract, or (v) option. The Transactions would be financed by a component part or parts (*e.g.*, Stock Loan) and/or by margin or collateral. The Transactions and related financings would be effectuated by a brokerage firm.

The Hedge could be effectuated in the form of a non-U.S. security futures product ("foreign security futures product"). You have requested our views on the specific aspects discussed below relating to the use of such foreign security futures products under relevant provisions of the U.S. Commodity Exchange Act as amended ("Commodity Act") and the U.S. Securities Exchange Act

**CONFIDENTIAL**          **PRIVILEGED - SUBJECT TO 502(d) ORDER**          **GUNDERSON 00010016**



AEF Investment LLC
February ●, 2014
Page 2

of 1934 as amended ("Exchange Act"), the "Order" of the SEC[1], and the "Advisory" of the staff of the U.S. Commodity Futures Trading Commission ("CFTC").[2]

The U.S. Commodity Futures Modernization Act of 2000 ("CFMA") granted the CFTC and the SEC joint authority and jurisdiction to regulate both U.S. and foreign security futures products. A "security futures product" is a security future or an option thereon (Commodity Act Section 1a(45) and Exchange Act Section 3(a)(56)). A "security future" is a futures contract on a single security or on a narrow-based security index (including any interest therein or based on the value thereof), with certain exceptions for Exchange Act exempted securities and certain swap/derivative transactions (Commodity Act Section 1a(44) and Exchange Act Section 3(a)(55)(A)). A "narrow-based security index" is defined in Commodity Act Section 1a(35) and Exchange Act Section 3(a)(55)(B).

The CFMA also amended Commodity Act Section 2(a)(1)(F)(ii) to permit "eligible contract participants" ("ECPs") to trade foreign security futures products traded on or subject to the rules of a foreign board of trade, exchange, or market to the same extent that they are permitted to trade non-U.S. securities so long as any underlying security for such security futures products is traded principally on, by, or through any exchange or market located outside of the United States. An ECP is a person who satisfies specific registration, sophistication, and/or credit standards to be eligible to transact in over-the-counter ("OTC") swaps and other derivatives as well as foreign security futures products, and is defined in Commodity Act Section 1a(18). The ECP definition in Commodity Act Section 1a(18) specifies persons which are ECPs ("Eligible Person Test"). The provisions of the ECP definition relevant to the Transactor conducting the Hedge constituting foreign security futures products[3] specify a "total assets" requirement ("Total Assets Test") -- so that, for purposes of such ECP provisions, a reasonable interpretation of the plain meaning of such words is that such assets should be determined on a gross basis before the determination of liabilities. Accordingly, if the Transactor otherwise satisfies the relevant Eligible Person Test, including without limitation the Total Assets Test, for purposes of the Commodity Act the Transactor should reasonably be able to represent to a broker or other person that the Transactor constitutes an ECP and may engage in a foreign security futures product as provided in the Commodity Act and the Advisory.

---

[1] SEC Exemption Order, Exchange Act Release No. 34-60194 (June 30, 2009).

[2] CFTC Advisory Letter, Division of Clearing and Intermediary Oversight, *Concerning the Offer and Sale of Foreign Security Futures Products to Customers Located in the United States* (2010).

[3] *e.g.*, Commodity Act Sections 1(a)(18)(A)(iv) (commodity pool), (v) (corporation, partnership, trust, or other entity), and/or (vi) (employee benefit plan).

CONFIDENTIAL          PRIVILEGED - SUBJECT TO 502(d) ORDER          GUNDERSON 00010017



AEF Investment LLC
February ●, 2014
Page 3

However, the CFMA substantially limited the use of Commodity Act Section 2(a)(1)(F)(ii) by adding Exchange Act Section 6(h)(1), which requires that all security futures products be listed for trading on national securities exchanges or national securities associations. The Order further provided, "[b]ecause of this [Section 6(h)(1)] prohibition, U.S. persons are currently unable to enter into contracts for narrow-based index or single stock futures traded on or subject to the rules of a foreign board of trade". Notwithstanding the foregoing, the Order granted an exemption from the Section 6(h)(1) restrictions to permit "qualified institutional buyers" ("QIBs") as defined in SEC Regulation 144A under the Securities Act, non-U.S. persons under SEC Rule 902 of Regulation S under the Securities Act, and certain broker-dealers and banks transacting on behalf of QIBs and non-U.S. persons to effect transactions in certain foreign security futures products on, or subject to the rules of, a foreign board of trade. The preamble to the QIB definition in Regulation 144A(a)(1)(i) specifies that an entity is a QIB if: (1) it is an entity specified in Regulation 144A(a)(1)(i)(A)-(I) ("Eligible Entity Test"); and (2) the entity, "acting for its own account or the accounts of other [QIBs] … in the aggregate owns and invests on a discretionary basis at least [U.S.] $100 million in securities of issuers that are not affiliated with the entity" ("Investment Assets Test") -- so that, for purposes of the QIB definition, a reasonable interpretation of the plain meaning of such words is that such security investment assets should be determined on a gross basis before the determination of liabilities. Accordingly, if the Transactor otherwise satisfies the relevant Eligible Entity Test in conducting the Hedge constituting foreign security futures transactions,[4] including without limitation the Investment Assets Test, for purposes of the Exchange Act the Transactor should reasonably be able to represent to a broker or other person that the Transactor constitutes a QIB and may engage in a foreign security future product as provided in the Exchange Act and the Order.

In response to the Order, the Advisory provided that the Order did not "modify the existing regulatory program of the CFTC". The Advisory clarified that, although the Commodity Act may permit ECPs to trade foreign security futures products to the extent that they are permitted to trade any other foreign security, the SEC's QIB requirement significantly limits this allowance for U.S. persons because a U.S. person must be both an ECP and a QIB to trade foreign security futures products (two significantly different investor suitability standards), and brokers and other intermediaries for such U.S. persons must comply with specific Commodity Act and Exchange Act requirements. And in regard to our views expressed in this letter, we assume that the Transactor will comply, and the Transactions and the Hedge (including particularly any foreign security future product) will be conducted in accordance, with all U.S. and non-U.S. laws, regulations, rules, directives, interpretations, customs, and practices, and particularly the Commodity Act and the Advisory (including the ECP definition) and the Securities Act, the Exchange Act, and the Order (including the QIB definition), and all provisions, requirements, specifications, conditions, and restrictions of and in the foregoing legal authority.

---

[4] *e.g.*, Regulations 144A(a)(1)(i)(E) (employee benefit plan), (F) (trust fund), and/or (H) (corporation, partnership, or business trust).

19016564.3.BUSINESS

CONFIDENTIAL                    PRIVILEGED - SUBJECT TO 502(d) ORDER        GUNDERSON 00010018



AEF Investment LLC
February ●, 2014
Page 4

This letter does not constitute an opinion of legal counsel, but rather only a reasoned analysis and interpretation of certain limited and specific (but not all) aspects of the legal authority expressly cited and discussed above. We have not undertaken any diligence, investigation, verification, or analysis of facts, law, regulation, or other legal authority relating to the Transactor, the Transactions, or the Hedge, and accordingly we express no view thereon and have made no determinations in respect thereof. Other than as expressly set forth above, we are not advising, and have not advised, you on any other aspect, issue, or matter relating to the Transactor, the Transactions, or the Hedge, including without limitation (a) any other law, regulation, rule, directive, or interpretation relating to commodities, securities, tax, pension, or other area, and (b) any determination as to the satisfaction of, or eligibility under, (i) the Eligible Person Test or the Total Assets Test, other provisions of the ECP definition, the Advisory, or the Commodity Act or (ii) the Eligible Entity Test or the Investment Assets Test, other provisions of the QIB definition, the Order, the Securities Act, or the Exchange Act. We also note that a regulator, tribunal, or other person could disagree with our views.

This letter is rendered to you as of the date hereof, and we undertake no obligation to update it or advise you of any change in any matters stated herein. Without our prior written consent, this letter may not be circulated, quoted, or otherwise referred to, and no person other than you is entitled to rely on it.

Sincerely,


M. Holland West
Partner

cc:     Caroline Levin
        William J. Tuttle


MHW/reb

19016564.3.BUSINESS

**CONFIDENTIAL**          **PRIVILEGED - SUBJECT TO 502(d) ORDER**          **GUNDERSON 00010019**